UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTINE TIMMON,

       Plaintiff,

v.

CAROL WOOD &
SANDY ALLEN,

       Defendants.
_____/

CHRISTINE TIMMON,

       Plaintiff,

v.

HAROLD LEEMAN &
KATHY DUNBAR,

       Defendants.
_____/

CASE NO. 5:05-CV-127

HON. ROBERT J. JONKER

Consolidated with:

CASE NO. 5:06-CV-07

## **OPINION**

### INTRODUCTION

       Plaintiff sues under 42 U.S.C. § 1983 and claims that Defendants violated her First Amendment rights by interrupting her and terminating or truncating her commentary during the public-comment period of Lansing City Council meetings on September 12, 2005, and January 5, 2006.  This is the sole remaining claim following earlier orders of the Court (docket # 56) and the U.S. Court of Appeals for the Sixth Circuit (docket #64).  Defendants move for summary judgment

(docket # 73) based on absolute legislative immunity or, in the alternative, qualified immunity. Plaintiff also moves for summary judgment (docket # 78).

## FACTS

*Background*

The Lansing City Council (the "Council") is comprised of eight councilmembers. It is the legislative and policy-making body for the City of Lansing. It sets policies, approves budgets, determines tax rates, and adopts ordinances and resolutions to govern the City. It relies on public input to fulfill its purposes. The Council meets weekly, and Council meetings are generally open to the public. The public not only has the right to attend Council meetings, but it also has the right to address the Council "under the rules established and recorded" by the Council. MICH. COMP. LAWS § 15.263(5).

The City of Lansing has adopted rules to govern the procedure at Council meetings. In particular, one of the Council's rules, Rule 19, provides that:

> The presiding officer shall conduct Council meetings in an orderly manner. Members of Council and others in attendance shall obey directions of the presiding officer. Citizens attending Council meetings may have up to three opportunities to address Council. Speakers are requested to print their names and addresses on registration sheets to assist in the accuracy of the Council proceedings. Extensions of speaker time limits are permissible at the discretion of the Council. Opportunities to address Council are:
>
> (1) Public hearings. Scheduled public hearings are held on specific legislative matters under consideration by Council. A three-minute time limit is imposed per speaker.
>
> (2) Comment on legislative matters scheduled for action. Citizens may present facts and opinions on legislative matters (consent matters, resolutions and ordinances) listed on the Council agenda and on such late legislative matters as may be added to the agenda. Each speaker is limited to three minutes total on legislative matters.

> (3) Comment on communications, petitions, and other city related matters, including reports from Council Committees, City Officers, or Boards and Commissions. Citizens may speak on any City government related matter. Each speaker is limited to three minutes total. The presiding officer may rule any speaker out of order for failing to speak on City government related matters.
>
> The purpose of the City Council meeting is to discuss City business and not to deal with individual personalities. Consequently, during any City Council meeting, the City Council shall not permit a personally-abusive attack upon any person during debate or public discussion. Nothing herein is intended to limit or restrain negative, positive or neutral comment about the manner in which an individual employee, officer, official or councilmember carries out his or her duties in public office or employment.
>
> Conduct contrary to the normal presentation of business during a Council meeting which disturbs or interrupts the orderly process of the proceeding is a disturbance. No speaker shall make any slanderous or profane remark which disturbs, disrupts or otherwise impedes the orderly conduct of any Council meeting.
>
> No person in the audience at a Council meeting shall engage in disorderly conduct, including the utterance of threatening or abusive language, whistling or stomping of feet, or any other act which disturbs, disrupts, or otherwise impedes the orderly conduct of any council meeting or the presentation of any speaker.

LANSING, MICH., ORDINANCES pt. 2 § 210.01, R. 19 (1997).

Plaintiff frequently attends Council meetings and speaks during the public-comment period. She also has multiple programs on a local public-access channel operated by Comcast Corporation.

*Council Meetings*

Plaintiff's claims arise out of Defendants' treatment of Plaintiff during the public-comment period at two regularly scheduled Council meetings. Defendant Wood was an at-large councilmember who, at the September 12, 2005, Council meeting raised a point of order regarding the potential application of Rule 19 to Plaintiff's comments. Defendant Dunbar was an at-large councilmember who, at the January 5, 2006, Council meeting raised a point of order regarding the

potential application of Rule 19 to Plaintiff's comments. Defendant Allen was the President of the Council during the September 12, 2005, meeting. Defendant Leeman was the President of the Council during the January 5, 2006, meeting. Defendants Allen and Leeman both presided over the meetings and interrupted Plaintiff's commentary while handling the points of order raised by Defendants Wood and Dunbar.

### *September 12, 2005, Council Meeting*

Plaintiff, along with several other citizens, made public comments at the regularly scheduled September 12, 2005, Council meeting. Specifically, Plaintiff commented that Mr. Glasscock, a former City police officer who spoke before her, was "old school" and "need[ed] to stay home." She went on to comment that the Council should pay Gary Andrews, another prior commenter, no attention because his comments were unfounded. At that point Defendant Wood raised a point of order requesting Rule 19 be enforced to prevent Plaintiff from making personally abusive attacks on private citizens. The clock stopped during the interruption. Defendant Allen responded to Defendant Wood's point of order by noting that Rule 19 prohibited personally abusive attacks. Plaintiff responded that she was not being abusive, that she was making relevant comments, and that she would be filing federal lawsuits. She redirected her comments but circled back around and said that Defendant Wood needed to "mind [her] own business." To this, Defendant Allen—without waiting for or raising a point of order, and without citing or using language from Rule 19—told Plaintiff to stop her commentary. "Ms. Timmon," she commanded, "that's enough." Plaintiff redirected her comments. When Plaintiff's allotted three minutes were exhausted, Plaintiff continued to comment. Defendant Allen eventually terminated her commentary by repeating "this is enough. Your time is up."

*January 5, 2006, Council Meeting*

Plaintiff, along with several other citizens, also made public comments at the regularly scheduled January 5, 2006, Lansing City Council meeting. Specifically, Plaintiff commented that the new mayor was a "carpetbagger" taking tax dollars out of the city. She went on to comment that Chris Swope, a city clerk, violated the Michigan Constitution by announcing at a public function that he had a husband. At that point Defendant Dunbar raised a point of order requesting that Rule 19 be enforced to prevent Plaintiff from making personally abusive attacks. Defendant Leeman responded to Defendant Dunbar's point of order by asking Plaintiff to direct her comments to "city matters." Plaintiff asked to stop the clock to discuss the appropriateness of her comments, but Defendant Leeman refused, stating "No. You go ahead, please." Plaintiff redirected her commentary and accused Defendant Dunbar of being a "cheater" based on allegations that she had remained at the polls longer than permitted on her election day. Defendant Leeman once again invoked the language of Rule 19 and requested that Plaintiff "refrain from personal attacks." He told her to "continue with city matters." Plaintiff complied and redirected her commentary. At the end of the three minutes allotted for Plaintiff's comments, Defendant Leeman thanked Plaintiff and terminated her commentary.

*Procedural Posture*

In Case No. 5:05-CV-127 Plaintiff sues Defendants Wood and Allen based upon the events that occurred during the September 12, 2005, Council meeting. In Case No. 5:06-CV-07 Plaintiff sues Defendants Leeman and Dunbar based upon the events that occurred during the January 5, 2006, Council meeting. Plaintiff's complaints allege (1) that Defendants are liable under 42 U.S.C. § 1983 for violating her First Amendment rights, (2) that Defendants violated the Michigan Open Meetings Act, MICH. COMP. LAWS § 15.261–.275, (3) and that Defendants Wood

and Allen violated 18 U.S.C. §§ 241–42. She seeks a money damages award of thirty million dollars from Defendants individually.[1] She does not seek declaratory or injunctive relief, and she seeks no relief against the City. The Court previously granted Defendants' motion to consolidate the two cases. (docket # 31 to Case No. 5:06-CV-7.)

In late 2005 and early 2006, the parties moved for summary judgment. The Court denied Plaintiff's motions, granted Defendants' motions, and dismissed the case with prejudice. (docket # 73.) The Court held that (1) there was insufficient evidence to allow a jury to find that Defendants had deprived Plaintiff of her constitutional rights, (2) there is no evidence in the record to support a claim under the Michigan Open Meetings Act, and (3) 18 U.S.C §§ 241–42 do not provide a civil cause of action and, consequently, Plaintiff could not bring a claim under those sections. (docket # 72.) Because the Court granted summary judgment to Defendants, the Court did not reach the issue of whether Defendants were entitled to absolute or qualified immunity.

Plaintiff appealed, and the Sixth Circuit affirmed in part but reversed and remanded with respect to Plaintiff's § 1983 claims alleging violations of the First Amendment. *Timmon v. Wood*, No. 06-2069, slip op. at 4 (6th Cir. June 14, 2007). The Sixth Circuit concluded that because Council Rule 19 "appear[ed] to burden substantially more speech than necessary to achieve" the legitimate government interest of preserving order in city council meetings, a reasonable juror could conclude that Defendants violated Plaintiff's First Amendment rights by invoking Rule 19 against Plaintiff's comments. *Id.*

---

[1] Plaintiff's complaint against Defendants Wood and Allen prays for ten million dollars; her complaint against Defendants Dunbar and Leeman prays for twenty million dollars. Plaintiff explained at oral argument that those demands were simply a "bluff," and that she believed thirty thousand dollars to be an appropriate settlement amount. She explained that she believed such an amount was necessary to deter future First Amendment violations.

Defendants have moved for summary judgment based on absolute immunity or, in the alternative, qualified immunity. Plaintiff has also moved for summary judgment. This Opinion addresses the parties' cross motions.

**ANALYSIS**

Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (citing FED. R. CIV. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the Court considers cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 506 (6th Cir. 2003).

**I. Plaintiff's First Amendment Claims**

Plaintiff alleges that Defendants violated her First Amendment rights by interrupting and ultimately terminating her commentary at two Council meetings. A legislative body like the Council may impose restrictions on a public commenter's speech as long as the restrictions (1) are content neutral, (2) are narrowly tailored, and (3) leave open alternative channels of communication. *Jobe v. City of Catlettsburg*, 409 F.3d 261, 266 (6th Cir. 2005). The Sixth Circuit has already held that Rule 19 is not narrowly tailored. *Timmon v. Wood*, No. 06-2069, slip op. at 3 (6th Cir. June 14, 2007).[2] Rule 19, the Sixth Circuit concluded, "appears to burden substantially more speech than

---

[2] docket # 81.

necessary to achieve" the legitimate government interest of preserving order in city council meetings to ensure that the meetings can be efficiently conducted. *Id.* at 4. Thus a reasonable juror could conclude that "applying Rule 19 against Timmon burdened more speech than is necessary to serve" a legitimate government interest. *Id.*

Because the Sixth Circuit has already held that Rule 19 is not narrowly tailored, and because there is more than enough evidence in the record to allow a reasonable juror to conclude that Defendants violated Plaintiff's First Amendment rights in this case, the Court will assume for purposes of these motions that Defendants violated Plaintiff's First Amendment rights. Thus the question before the Court is not whether Defendants' conduct violated Plaintiff's constitutional rights; the question is not whether Rule 19 is unconstitutional on its face or as applied; the question is not whether declaratory or injunctive relief is appropriate or available; and the question is not whether Plaintiff is entitled to any relief (injunctive, declaratory, or monetary) from the City. The only questions presented by the parties' cross motions are whether Defendants, even though their conduct is now assumed to violate Plaintiff's constitutional rights, are entitled to absolute or qualified immunity from Plaintiff's suit for money damages.

**II. Legislative Immunity**

Legislators have long been protected from liability for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 48–49 (1998). This is because, "[r]egardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *Id.* at 52. Local legislators in particular are entitled to immunity because "the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace." *Id.* In fact, without legislative immunity, "the threat of liability may significantly deter service in local

government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability." *Id.* For those reasons, local officials like Defendants are absolutely immune from § 1983 suits arising out of their legislative actions. *Id.* at 54.

Actions are legislative when "they are integral steps in the legislative process." *Id.* at 55. Signing an ordinance into law is "quintessentially legislative," *id.*, but the definition is broader and covers other aspects of the legislative process, including a legislative committee's "deliberative and communicative processes." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503–04 (1975); *see Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 630 (9th Cir. 1995) (holding that absolute immunity covers "not only speech and debate per se, but also voting, . . . circulation of information to other legislators, . . . participation in the work of legislative committees, . . . and a host of kindred activities." (citations omitted)). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. "The claim of an unworthy purpose does not destroy the privilege," and a legislator is entitled to absolute immunity for actions taken within the legislative sphere even if the legislator acted "to intimidate and silence" and to prevent a person "from effectively exercising h[er] constitutional rights of free speech and to petition the Legislature for redress of grievances." *Tenney v. Brandhove*, 341 U.S. 367, 371, 377 (1951). Thus the only question in deciding whether Defendants are entitled to absolute immunity is "whether, stripped of all considerations of intent and motive, [their] actions were legislative." *Bogan*, 523 U.S. at 55. Defendants' actions were legislative (i.e., they fell within the "legitimate legislative sphere") if they were an integral part of the Council's investigatory power. *See Eastland*, 421 U.S. at 503.

A city council is acting in its legislative capacity when it exercises its investigatory power by presiding over a public-comment period. "A legislative body cannot legislate wisely or

9

effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927). Public comment is a useful way for a legislative body to gather necessary information to address the priorities of its constituents, and public comment has become a routine and legitimate part of modern-day legislative process. Indeed, under Michigan law, as long as a commenter complies with the Council's rules governing public comment the Council is obligated to hear a person's comments. MICH. COMP. LAWS § 15.263(5). By rule, comments must be directed to (1) "specific legislative matters under consideration by Council," (2) consent matters, resolutions, or ordinances, or (3) "other city related matters." LANSING, MICH., ORDINANCES pt. 2 § 210.01, R. 19 (1997). Taking public comment is thus an integral—and required—part of the Council's investigatory and information-gathering functions. It provides insight into public opinion on specific legislative matters under consideration by the Council, particular pieces of legislation passed by the Council, and other city matters that the Council might wish to address in fulfilling its role as the legislative and policy-making body for the City. In short, public comment provides the Council with the information necessary to create wise and effective legislation.

Defendants' actions toward Plaintiff during the public-comment period at each of the meetings fell within the legitimate legislative sphere. Defendants furthered the Council's investigatory and information-gathering needs when they presided over the public-comment period. Directing a speaker's comments to relevant, city matters is integral to furthering the recognized legislative function of determining the "priorities of the city and the services the city provides its constituents." *Canary v. Osborn*, 211 F.3d 324, 331 (6th Cir. 2000); *see Avila v. Witkowski*, 219 F. App'x 62, 62 (2d Cir. 2007) (holding that a local legislator was entitled to legislative immunity when he argued with a fellow legislator during a public meeting, demanded that she leave the

committee, and threatened to remove her from the meeting for being out of order). Defendants' role during public comment was to facilitate information gathering and to maintain orderly and relevant public discussion to further that role. Defendants may have performed these legislative functions in contravention of Plaintiff's First Amendment rights, but their conduct was nonetheless part of gathering information during the public-comment period of a regularly scheduled Council meeting. They were not taking actions that were merely "casually or incidentally related to legislative affairs." *Hansen v. Bennett*, 948 F.2d 397, 402 (7th Cir. 1991). Instead they were overseeing and guiding the portion of a legislative session dedicated to "investigating . . . legislative issue[s]." *Kamplain v. Curry County Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998). Their actions were, in other words, an integral part of the Council's gathering of information necessary to effect wise and effective legislation. Accordingly, Defendants' actions were within the "legitimate legislative sphere," and Defendants are entitled to absolute immunity from Plaintiff's suit.

Legislative immunity from claims for money damages is an important aspect of preserving the core legislative function and limiting potential judicial interference with that function. If Plaintiff were challenging the constitutionality of Rule 19, or even the simple application of that rule by seeking declaratory or injunctive relief against the City's use of the rule, then this might be a different case. But in this case Plaintiff has brought a § 1983 action for money damages in the amount of thirty million dollars against individual legislators who were clearly acting within the legitimate legislative sphere. Regardless of Defendants' subjective intent, no matter how ill-advised their actions were, and regardless even of an assumed violation of Plaintiff's constitutional rights, legislative immunity protects these individual Defendants from claims for money damages.

### III. Qualified Immunity

Because Defendants are entitled to absolute immunity, the Court must grant their motion for summary judgment. But even if Defendants were not entitled to absolute immunity, Defendants argue that they would still be entitled to qualified immunity. The Court will address Defendants' alternative argument, which has been fully briefed and argued, even though it is not essential to the decision.

Even if a government official violates an individual's constitutional rights, the official is immune from suit—not just liability—if the violated right was not clearly established at the time of the official's actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, "qualified immunity shields an [official] from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). A two-stage inquiry is used to determine whether an official is entitled to qualified immunity. The "threshold question" in the qualified immunity analysis is whether the facts alleged show that the official's conduct violated a constitutional right. This means that a court must first perform the constitutional analysis to determine whether there was a violation of a constitutional right. *Marvin v. City of Taylor*, 509 F.3d 234, 243–44 (6th Cir. 2007). Only if a court determines that there was a violation of a constitutional right will it turn to the second question: "whether the right was clearly established . . . in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Plaintiff meets the threshold of establishing that there was a violation of a constitutional right. The Sixth Circuit held that a reasonable jury could find that Defendants' conduct violated Plaintiff's First Amendment rights, and, as explained in Part I, the Court assumes that Defendants did, in fact, violate Plaintiff's constitutional rights. There is ample evidence to

support such a finding.  Thus the Court must turn to the second stage of the qualified-immunity analysis.

To determine whether a right was "clearly established," courts in the Sixth Circuit look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit, then to decisions of district courts within the Sixth Circuit, then to decisions of courts from other circuits. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).  But a lack of caselaw squarely governing a given issue does not mean that a right is not clearly established. *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).  The question in deciding whether a right was clearly established where there is no precedent on point is whether "defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005).  Fair warning can be established when a violation is "sufficiently obvious under the general standards of constitutional care." *Lyons*, 417 F.3d at 579.  Importantly, qualified immunity does not demand perfect understanding of the applicable laws.  There is "ample room for mistaken judgments," and "all but the plainly incompetent or those who knowingly violate the law" will be held to enjoy qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

The Court is not aware of a Supreme Court or Sixth Circuit case addressing the issue of whether defendants violate a citizen's clearly established right when they truncate or redirect the citizen's comments at a public hearing on facts like those present here.  The Third Circuit, however, has addressed a very similar issue:

> It is clearly established that when a public official excludes a[n] elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment. *See, e.g.*, *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 281 (3d Cir. 2004) (applying public forum analysis to township official's curtailing of allegedly disruptive speech at a public meeting); *Collinson v. Gott*, 895 F.2d 994, 995, 999 (4th Cir. 1990) (removal of citizen from public meeting of county commissioners for interruptions and truculence); *Jones v. Heyman*, 888 F.2d 1328,

13

> 1329 (11th Cir. 1989) (mayor's silencing and removal of citizen from public meeting for disruptive behavior); *Musso v. Hourigan*, 836 F.2d 736, 739 (2d Cir. 1988) (school board's removal of citizen from public meeting for disruptive behavior). It is also clearly established that content-based restrictions on speech in a public forum are subject to strict scrutiny, while viewpoint-based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest. *See, e.g.*, *Good News v. Milford Cent. Sch.*, 533 U.S. 98, 106-107, 121 S. Ct. 2093, 150 L. Ed. 2d 151 (2001); *Rosenberger v. Rector & Visitors of Univ. Of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 392-393, 113 S. Ct. 2141, 124 L. Ed. 2d 352 (1993).

*Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006). Applying those clearly established rules to this case, the dispositive issue with respect to qualified immunity is whether Defendants acted with the intent to silence Plaintiff's viewpoint or whether they acted with the intent to further the legitimate government interest of applying Rule 19—a rule they believed to be a valid restriction on speech—to preserve order in city council meetings. If Defendants acted with intent to silence Plaintiff's viewpoint then they violated clearly established law and would not be entitled to qualified immunity.

A defendant's motive is a question of fact that must be determined by a jury, *id.* at 405, but to survive Defendants' motion for summary judgment Plaintiff must present sufficient evidence to allow a jury to find that Defendants intended to silence her viewpoint. *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (holding that to survive a defense motion for summary judgment asserting qualified immunity based on a constitutional issue that depends on evidence of motive or improper intent, a plaintiff must identify affirmative evidence from which a jury could find the necessary intent). If Plaintiff fails to present such evidence then she fails to carry her burden under Rule 56(e) of the Federal Rules of Civil Procedure and Defendants are entitled to summary judgment. Thus the narrow question is whether there is sufficient evidence in the record to allow a jury to find that Defendants acted with the intent to silence Plaintiff's viewpoint.

14

*Defendant Dunbar*

There is not sufficient evidence in the record to allow a jury to find that Defendant Dunbar acted with the intent to silence Plaintiff's viewpoint. Defendant Dunbar raised a point of order regarding the potential application of Rule 19 to Plaintiff's comments. In doing so, she acted to carry out one of her prerogatives as a local legislator. *See* ROBERTS RULES OF ORDER 61(d) (explaining that a councilmember may raise a point of order in response to a suspected breach of the rules of decorum). It was the responsibility of the Council President, not Defendant Dunbar, to rule on the point of order and enforce Rule 19 if appropriate. *See id.* (providing that it is the duty of the president to respond to points of order, enforce the rules, and preserve order). Defendant Dunbar did not enforce or apply Rule 19. Indeed, she could not have because that was Defendant Leeman's responsibility. She did not talk over Plaintiff or otherwise force her to be quiet or refrain from commenting. She did not silence Plaintiff's speech. She merely raised a point of order. Thus there is not sufficient evidence in the record to allow a reasonable jury to conclude that Defendant Dunbar acted to silence Plaintiff's viewpoint. Accordingly, Defendant Dunbar is entitled to qualified immunity.

*Defendant Leeman*

There is not sufficient evidence in the record to allow a jury to find that Defendant Leeman acted with the intent to silence Plaintiff's viewpoint. Defendant Leeman asked Plaintiff to redirect her comments to city matters. He did not rule on Defendant Dunbar's point of order. He did not enforce Rule 19. Much the way a judge, instead of ruling on an objection, might ask an attorney to rephrase a question, Defendant Leeman simply requested that Plaintiff redirect her commentary and conform to Rule 19.

15

Once Defendant Dunbar raised a point of order, Defendant Leeman had an obligation to do something with it. He chose to avoid, or at least defer, a ruling by asking Plaintiff to redirect her comments. He did not ask Plaintiff to stop talking; he did not tell her to sit down; and he did not remove her or otherwise silence her. Instead he requested that Plaintiff comply with Rule 19. She complied. She could have demanded a ruling on the point of order. She could have forced a ruling by continuing, without redirecting, her commentary. But she did not. As a result, there is not sufficient evidence in the record to allow a juror to conclude that Defendnat Leeman acted with the intent to silence Plaintiff's viewpoint. Accordingly, Defendant Leeman is entitled to qualified immunity.

### *Defendant Wood*

There is not sufficient evidence in the record to allow a jury to find that Defendant Wood acted with the intent to silence Plaintiff's viewpoint. She is entitled to qualified immunity because, in the course of a legislative meeting, she merely raised a point of order regarding the potential application of Rule 19 to Plaintiff's comments. Like Defendant Dunbar, Defendant Wood raised a point of order regarding the potential application of Rule 19 to Plaintiff's comments. Unlike Defendant Dunbar, Defendant Wood talked over Plaintiff and asked her to refrain from making comments about individuals, but her communication was an attempt to explain to Defendant Allen the grounds for her point of order. In raising a point of order, she carried out one of her prerogatives as a local legislator. It was the responsibility of the Council President, not Defendant Wood, to rule on the point of order and enforce Rule 19 if appropriate. Defendant Wood did not enforce or apply Rule 19. She did not force Plaintiff to be quiet or refrain from commenting. She did not silence Plaintiff's speech. She merely raised a point of order. Thus there is not sufficient evidence in the

record to allow a reasonable jury to conclude that Defendant Dunbar acted to silence Plaintiff's viewpoint. Accordingly, Defendant Dunbar is entitled to qualified immunity.

### *Defendant Allen*

There is sufficient evidence in the record to allow a jury to find that Defendant Allen acted with the intent to silence Plaintiff's viewpoint. Defendant Allen first responded to Defendant Wood's point of order by noting that Rule 19 prohibits personally abusive attacks. Like Defendant Leeman, Defendant Allen did not rule on the point of order, and like Defendant Leeman, if this were all Defendant Allen did she too would be entitled to qualified immunity.

But unlike Defendant Leeman, Defendant Allen went on to interrupt and silence Plaintiff. A short while after Defendant Allen dealt with Defendant Wood's point of order, Plaintiff commented that Defendant Wood needed to mind her own business. At that point Defendant Allen, without making or responding to a point of order, simply demanded that Plaintiff stop talking. She commanded: "Ms. Timmon, that's enough." In doing so, Defendant Allen did not refer to Rule 19 or use language in Rule 19. This is evidence that rather than attempting to maintain decorum and apply what she believed to be a valid rule, Defendant Allen was responding to a message she did not like. This is not such overwhelming evidence of Defendant Allen's state of mind that Plaintiff is entitled to summary judgment, but it is certainly evidence on which a reasonable juror could rely to conclude that Defendant Allen's actions violated clearly established constitutional law prohibiting viewpoint-based restrictions.

There is a genuine issue of material fact. A reasonable juror could find that Defendant Allen's motive for acting against Plaintiff resulted from the content of Plaintiff's speech. Alternatively, a reasonable juror could find that Defendant Allen was simply trying to apply what she believed to be a constitutional rule to maintain order for the efficient administration of her

17

legislative responsibilities. Because a reasonable juror could find either of those alternatives, neither Defendant Allen nor Plaintiff Timmon is entitled to summary judgment on the question of qualified immunity.

### IV.  Council Rule 19

It is understandable that the Council would want a rule like Rule 19. City councils have legitimate reasons for having rules to maintain decorum at public meetings. Indeed, the "preservation of order in city council meetings to ensure that the meetings can be efficiently conducted" is a legitimate government interest justifying rules like Rule 19. *Timmon v. Wood*, No. 06-2069, slip op. at 4 (6th Cir. June 14, 2007). But Rule 19 is a risky way of furthering that legitimate government interest. Rule 19 is easily invoked in a way that leads to at least the perception—and perhaps the reality—of an impermissible silencing of a viewpoint. Rather than invoking Rule 19 in this case, with the benefit of hindsight it surely seems more prudent for the Council to permit Plaintiff to comment without interruption during her brief allotment of three minutes. This is especially true when her comments were directed to public officials, rather than private citizens, as they were in the January 5, 2006, meeting. This would probably have generated less disruption during the meeting, and certainly would have generated less litigation after the meeting.

But a legislator, like a judge, has a need and constitutional prerogative to perform her core function without interference from other branches of government, and in particular without the threat of a potentially ruinous claim of individual liability for money damages. Indeed, this is the primary justification for legislative immunity. *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998). So in this case, despite what seems in retrospect to have been an unwise and likely unconstitutional application of Rule 19, Defendants are immune from this suit for damages because their actions

were part of the core legislative function of gathering information during the public-comment period of a regularly scheduled Council meeting.

## CONCLUSION

Defendants' motions for summary judgment are granted, and Plaintiff's motion is denied. Defendants were acting within the legitimate legislative sphere when they presided over the public-comment period of the Lansing City Council meetings on September 12, 2005, and January 5, 2006. Defendants, as local legislators acting within the legitimate legislative sphere, are entitled to absolute immunity from Plaintiff's suit for money damages.


Dated:     April 21, 2008              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       UNITED STATES DISTRICT JUDGE